# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN MAJOR, DERRICK WALKER, BENJAMIN NEWPORT, SHAWNA WILLIAMS, and ASHLEY DORSEY<br><br>　　　Plaintiff<br><br>　v.<br><br>O'REILLY AUTOMOTIVE STORES, INC.<br><br>　　　Defendant | Civil Action No. _____<br><br>COMPLAINT AND<br>JURY TRIAL DEMAND |

Plaintiffs Kevin Major, Derrick Walker, Benjamin Newport, Shawna Williams, and Ashley Dorsey, through undersigned counsel, hereby allege as follows:

## THE PARTIES

1. Kevin Major is an individual of the full age of majority residing in Orleans Parish, Louisiana.

2. Derrick Walker is an individual of the full age of majority residing in Orleans Parish, Louisiana.

3. Benjamin Newport is an individual of the full age of majority residing in Orleans Parish, Louisiana.

4. Shawna Williams is an individual of the full age of majority residing in Orleans Parish, Louisiana.

5. Ashley Dorsey is an individual of the full age of majority currently residing in East Baton Rouge Parish, Louisiana. During the time period relevant to this lawsuit, she resided in Orleans Parish, Louisiana.

6.	Defendant O'Reilly Automotive Stores, Inc. ("O'Reilly") is a Missouri corporation headquartered and with its principal place of business located in Missouri. Its registered agent for service of process in this state is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana.

7	According to its SEC filings, Defendant is a "specialty retailer of automotive aftermarket parts, tools, supplies, equipment and accessories." Defendant owns and operates numerous retail stores within this state, including at least 10 retail stores within this District.

## JURISDICTION AND VENUE

8.	This Complaint is brought pursuant to the Louisiana Employment Discrimination Law ("LEDL").

9.	Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332.

10.	The parties are completely diverse. Plaintiffs are all domiciled in and citizens of the state of Louisiana, and O'Reilly is a corporate citizen of the state of Missouri.

11.	The amount in controversy as to each individual plaintiff's claim exceeds $75,000.

12.	Defendant has employed more than 500 employees nationwide at all times relevant to this action.

13.	Defendant has employed more than 20 employees within the state of Louisiana at all times relevant to this action, and during every working day within at least twenty weeks within the current or preceding calendar year.

14.	Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

15.	Plaintiffs provided written notice of the alleged discrimination and harassment set forth herein at least thirty days before initiating this action. Plaintiffs have made a good faith effort to

resolve the dispute prior to initiating court action.

## FACTUAL ALLEGATIONS

16. Plaintiffs are former O'Reilly employees who have been subjected to sexual harassment and discrimination and a sexually hostile work environment, and have been retaliated against for speaking out against the unchecked atmosphere of sexual harassment that is endemic to O'Reilly retail stores in Orleans Parish.

17. According to federal Bureau of Labor Statistics reports, only 15.2% of retail employees in the "Automotive parts, accessories, and tire stores" sector were female in 2016. *See* https://www.bls.gov/cps/cpsaat18.htm (last visited June 30, 2017). This is the lowest percentage of women employees in any of the retail sectors tracked by the BLS.

18. The O'Reilly retail stores in Louisiana operate as a "good old boys" club, as the managers and supervisors both condone and actively participate in an atmosphere of pervasive sexual harassment, and punish anyone who dares speak out against them.

19. Ponce Carter, an O'Reilly Store Manager, managed and supervised each of the plaintiffs in this action.

20. Plaintiff Ashley Dorsey and Shawna Williams were both direct targets of Carter's unwelcome advances.

21. Dorsey began working for O'Reilly in April 2016, at the retail store located at 9601 Chef Menteur Highway (the "Chef Highway store.") Carter interviewed and hired Ms. Dorsey, and told her that he would "take care of her."

22. After Dorsey had been working for a few weeks, Carter began making aggressive passes at her during work hours. She rejected his advances, but he persisted.

23. Carter asked Dorsey to come to a hotel room with her, and to have drinks. She refused.

24. Carter repeatedly commented on Dorsey's appearance, her clothing, and her smell, in an

aggressive and unwelcome manner.

25. Carter also sent Ms. Dorsey harassing text messages.

26. By July 2016, Carter finally understood that Ms. Dorsey was not interested in a romantic or sexual relationship with him. As a result, he decided to fire her.

27. At the time, Carter was scheduled to transfer from the Chef store to the O'Reilly location on Earhart Expressway (the "Earhart Store.") Ray Courtney was slated to take over as manager the Chef Highway Store.

28. On Courtney's first day as manager, Carter and Courtney fired Dorsey. The stated reason for this termination was "tardiness," but this excuse was a pretext for the actual cause: revenge for rejecting Carter's advances.

29. Courtney and Carter met with Dorsey to terminate her on or about July 20, 2016.

30. Prior to this meeting, Carter or Courtney edited Dorsey's electronic time records to create a pretext for her termination.

31. After her termination, Dorsey called O'Reilly HR to complain about Carter's unlawful discrimination. She was told that an investigation would be opened and that she would soon be interviewed. However, no O'Reilly representative ever interviewed Ms. Dorsey in connection with her complaint.

32. Plaintiff Shawna Williams was also a target of Carter's sexual advances.

33. Williams began working at the Chef Highway Store in February 2013 and later transferred to the Earhart Store, where she was the Assistant Manager.

34. Within the first year after Williams began working for O'Reilly, Carter began making sexually suggestive comments to her. He offered to buy her meals and said that he would buy her gifts if she slept with him. He also told Williams that his wife was 60 years old (Ms. Williams is significantly younger) and that he could "take care of her."

35. Carter made comments about Williams's appearance or clothing on an almost daily basis, and asked her to "give him some."

36. Carter also sent inappropriate and sexually suggestive text messages to Williams.

37. Williams witnessed Carter sexually harassing other female employees while on the job.

38. Once Carter finally realized that Ms. Williams was not interested in him, he grew increasingly antagonistic and decided to terminate her.

39. Carter fired Williams on December 15, 2016 because she refused to go along with Carter's sexual advances.

40. The remaining plaintiffs – Kevin Major, Benjamin Newport, and Derrick Walker – were not direct targets of Carter's sexual advances. Instead, they were punished for speaking out against the ongoing mistreatment of female employees.

41. Kevin Major worked at O'Reilly from June 6, 2015 until January 2017, when he was taken off the schedule. His title was Retail Service Specialist.

42. O'Reilly has never "officially" terminated Major from his employment, in an apparent attempt to prevent him from claiming unemployment compensation.

43. Nonetheless, O'Reilly has constructively terminated Major by not scheduling him to work a single shift since January 2017.

44. Derrick Walker worked at O'Reilly as an Assistant Manager from March 2013 through December 2016, when he was terminated.

45. Benjamin Newport worked at O'Reilly from June 2015 through November 2016, when he was terminated. His titles were Retail Service Specialist, and later Installer Service Specialist.

46. Carter incessantly made sexual comments regarding female employees to Major, Walker, and Newport. Carter also claimed that various female workers were making sexual advances on him.

47. Carter apparently believed that Major, Walker, and Newport would join in his

inappropriate comments, but they refused to do so and instead remained professional. They told Carter that his behavior was wrong and that he should stop speaking about female employees in that manner.

48. Carter told Williams that he wanted to "get rid of" Major and Walker because of their complaints.

49. After Ray Courtney became manager of the Chef Highway Store, he too began making inappropriate and sexually harassing comments regarding female employees.

50. Both Dorsey and Williams also raised complaints regarding Carter's harassment.

51. At least one other female employee, Yardonis, complained to Major that Carter was harassing her at the Earhart store.

52. Major, Walker, and Newport confronted Carter and told him to stop harassing female employees.

53. When Carter ignored their concerns, Major, Walker and Newport moved up the chain of command and complained to District Manager Arty Wilson.

54. Wilson responded to Major: "I don't give a fuck who is fucking who. Just sell parts."

55. Wilson also defended Carter in conversations with Newport.

56. Major, Newport, and Williams also raised concerns over parts thefts at O'Reilly, which they believed were being orchestrated by management including Carter and Courtney.

57. Newport and Walker were terminated in retaliation for engaging in the protected conduct alleged herein.

58. Prior to his constructive termination, Major was summoned to Baton Rouge to speak with Tommy Fagan. During this conversation, Major again raised his concerns about Carter, including the sexually harassing behavior. Fagan accused Major of "helping" female employees make sexual harassment complaints against Carter.

59. Fagan and Carter have been personal friends for at least 11 years.

60. Defendant constructively terminated Major in retaliation for the protected conduct alleged herein.

61. On information and belief, O'Reilly managers including Fagan, Carter, and Wilson, have smeared the names of Newport, Major, and Walker to other businesses in the local automotive industry, in an attempt to prevent them from finding new jobs.

## FIRST CAUSE OF ACTION

## (DISCRIMINATION AND HARASSMENT)

## DORSEY AND WILLIAMS ONLY

62. Plaintiffs hereby reallege and reincorporate paragraphs 1-61.

63. Defendant intentionally discriminated against Dorsey and Williams on the basis of their sex. Defendants' actions were willful and in reckless disregard for Plaintiffs' rights.

64. Defendant created, tolerated, and condoned unlawful and sexually harassing conduct that was severe or pervasive, and directed towards Dorsey and Williams on the basis of their sex.

65. As a direct and proximate result of Defendant's unlawful conduct, Dorsey and Williams have suffered damages including but not necessarily limited to lost wages, lost fringe benefits, emotional distress, and damaged reputations.

## SECOND CAUSE OF ACTION

## (RETALIATION)

## ALL PLAINTIFFS

66. Plaintiffs hereby reallege and reincorporate paragraphs 1-65.

67. Plaintiffs have suffered retaliation due to their protected conduct under the LEDL and their opposition to Defendant's unlawful practices. Defendants' actions have been willful and in reckless disregard for Plaintiffs' rights.

68. In response to this protected conduct, Defendant has retaliated by taking materially

adverse action, up to and including termination, against the Plaintiffs.

69. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered damages including but not necessarily limited to lost wages (both front and back pay), lost fringe benefits, and emotional distress, and damaged reputations.

## JURY DEMAND

70. Plaintiffs hereby request trial by jury on all counts so triable.

**WHEREFORE**, Plaintiffs respectfully pray for judgment as follows:

    a.    For a declaratory judgment declaring Defendant's conduct unlawful;

    b.    For an award of lost wages, including both back pay and front pay;

    c.    For an award of lost fringe benefits, including both back benefits and front benefits;

    d.    For other general or compensatory damages available under law;

    e.    For an award of reasonable attorney's fees pursuant to La. Rev. Stat. § 23:303(A);

    f.    For costs of suit;

    g.    For injunctive and equitable relief, including reinstatement;

    h.    For pre and post-judgment interest; and

    i.    For such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ Charles J. Stiegler
Charles J. Stiegler, #33456
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com